UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                                  Chapter 7

Francisco Arnold,                                       Case No. 19-54252

    Debtor.                                             Hon. Phillip J. Shefferly
_____/

**OPINION AND ORDER GRANTING CHAPTER 13 ATTORNEY'S
APPLICATION FOR COMPENSATION**

On October 7, 2019, Francisco Arnold ("Debtor") filed this Chapter 13 case. On March 25, 2020, the attorney for the Debtor, Thornbladh Legal Group, P.L.L.C. ("Thornbladh"), filed an application ("Application") (ECF No. 53) for $1,700.00 of fees, covering the period from October 7, 2019 through March 25, 2020. Later the same day, the Debtor voluntarily converted his case from Chapter 13 to Chapter 7. The only objection to the Application was made by the Chapter 13 Trustee ("Trustee"). On April 30, 2020, the Court held a hearing and took the Application under advisement.

The Trustee does not object to the amount of fees requested in the Application. The Trustee's sole objection is that the Trustee cannot pay any fees awarded out of the funds that the Trustee has on hand from payments made to the Trustee by the Debtor. According to the Trustee, the Supreme Court's opinion in Harris v. Viegelahn,

575 U.S. 510, 135 S. Ct. 1829 (2015), prohibits the Trustee from disbursing any funds on hand to anyone other than the Debtor.

In response, Thornbladh argues that Harris is distinguishable, and that the third sentence of § 1326(a)(2) of the Bankruptcy Code, which was not at issue in Harris, requires the Trustee to pay any fees awarded as an administrative expense claim before returning any funds to the Debtor.

In Harris, the debtor made payments to the trustee under a confirmed Chapter 13 plan for some time, before voluntarily converting to Chapter 7. Id. at 1836. Despite the conversion, the Chapter 13 trustee proceeded to distribute the remaining funds on hand to creditors under the confirmed plan, after first paying herself the Chapter 13 trustee's statutory fee and paying the debtor's attorney fee. The debtor moved for an order directing the trustee to refund to the debtor the amount of those funds that the trustee paid to the debtor's creditors after conversion — not the amounts paid as administrative expenses, just the amounts paid to creditors under the confirmed plan. The issue was whether the trustee was authorized post-conversion to distribute those funds to creditors under the confirmed Chapter 13 plan, or was obligated to return those funds to the debtor. Id. at 1834-35. The Supreme Court held that a "core" service provided by the Chapter 13 trustee under § 1326(c) of the Bankruptcy Code is making payments to creditors under a confirmed plan. Once the case was converted to

Chapter 7, that core service ended under § 348(e) of the Bankruptcy Code, which expressly "terminates the service" of a Chapter 13 trustee upon conversion to Chapter 7. Id. at 1838. The Supreme Court explained that "[w]hen a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway." Id. at 1838.

Since Harris, there have been numerous reported opinions quoting the phrase "no Chapter 13 provision holds sway" and applying it to Chapter 13 cases that have come to an end either by conversion or dismissal. This Court applied that phrase in In re Bateson, 551 B.R. 807 (Bankr. E.D. Mich. 2016) to a Chapter 13 case that was dismissed post-confirmation to require the Chapter 13 trustee to recoup and refund to the debtor payments that the trustee had made after dismissal to creditors under the debtor's confirmed Chapter 13 plan. But there are two important reasons why Harris is distinguishable from this case, and why its "no Chapter 13 provision holds sway" language does not apply here.

First, the Chapter 13 case in Harris was converted *after* confirmation. In the case before the Court, the Debtor did not confirm a plan before he converted his case to Chapter 7. Unlike the trustee in Harris, the Trustee in this case never made any payments to creditors under § 1326(c). In other words, the making of payments to creditors was not a "service" that was being performed by the Trustee that was required

to terminate on conversion. The Harris discussion about a trustee terminating the trustee's service of paying creditors under a confirmed plan does not apply to this case.

This case is controlled by § 1326(a)(2). The first sentence of § 1326(a)(2) states that payments made by a debtor under a plan "shall be retained by the trustee until confirmation or denial of confirmation." The second sentence of § 1326(a)(2) tells a trustee what to do if a plan is confirmed, but that is not what happened here. In this case, the relevant part of § 1326(a)(2) is the third sentence of the statute, which expressly applies only to cases — unlike Harris — where a plan is not confirmed. That sentence tells the trustee, in plain and unambiguous terms, what to do with funds that the trustee holds from payments made by the debtor: "if a plan is not confirmed . . . the trustee shall return any such payments . . . to the debtor, after deducting any unpaid claim allowed under section 503(b)."

The Supreme Court had no occasion in Harris to consider the third sentence of § 1326(a)(2) because, as explained, the conversion in Harris took place *after* a plan was confirmed. While Harris' language is undeniably broad, and can readily be applied in other contexts when not at odds with provisions of the Bankruptcy Code, the Court does not read the broad language Harris as overriding the plain and unambiguous statutory command in the third sentence of § 1326(a)(2), which by its terms only applies to a case that is fundamentally different than Harris — one where no plan was

ever confirmed. Nothing in Harris permits the Trustee or the Court to ignore this statutory command. See In re Hayden, case no. 4:15-bk-12619-BMW, 2018 WL 3157020 (Bankr. D. Ariz. June 25, 2018) (finding that Harris "does not preclude this Court from approving the payment of allowed administrative expenses, including attorneys' fees, from funds held by the Chapter 13 trustee in a case converted to Chapter 7 prior to plan confirmation").

Second, and quite apart from the post-confirmation/pre-confirmation distinction, Harris did not address what a trustee should do about unpaid expenses of administration when a case is converted from Chapter 13 to Chapter 7. The Supreme Court's opinion noted in its recitation of facts that following the debtor's conversion, the trustee in that case paid two administrative expense claims: $267.79 to herself for the Chapter 13 trustee fee, and $1,200.00 to the debtor's attorney for his attorney fee. 135 S. Ct. at 1836. The debtor's motion did not seek to have the trustee refund those payments, but only sought to have the trustee refund the payments that the trustee made to creditors under the confirmed plan. Harris did not state that it was improper for the trustee to have paid these expenses of administration before returning any remaining funds to the debtor. Moreover, the Supreme Court in Harris was concerned with a specific policy — protecting an individual debtor's post-petition wages from becoming property of the estate in a case converted to Chapter 7. It would be "incompatible with

[the] statutory design," Id. at 1837, to permit a terminated Chapter 13 trustee to make payments to an individual's creditors from wages that were not property of the estate and therefore not available to pay those very same creditors. This policy is not implicated when considering payment of the expenses of administration of the individual's Chapter 13 case to a trustee or an attorney who represented the individual debtor in the Chapter 13 case. The debtor's creditors gain no improper advantage by having these expenses of administration paid, and the debtor's post-petition wages are not thereby rendered available to creditors who would otherwise have no claim to them in Chapter 7. The payment of expenses of administration was not at issue before the Supreme Court in Harris. Rather, the Supreme Court addressed only the question of whether the funds remaining in the trustee's possession *after payment of expenses of administration* should be paid to creditors under the debtor's confirmed plan or returned to the debtor.

Thornbladh's Application is an unpaid administrative expense claim under § 503(b)(2). Thornbladh filed it timely under Fed. R. Bankr. P. 1019(6). There are no objections to the amount sought in the Application, and the Court finds the requested fees to be reasonable. Therefore, Thornbladh has an allowed administrative expense

claim under § 503(b). The Trustee's obligation to return funds on hand to the Debtor is subject to payment of this allowed claim.[1]

Accordingly, for the reasons stated,

**IT IS HEREBY ORDERED** that Thornbladh's Application (ECF No. 53) is granted in full and Thornbladh is awarded attorney fees in the amount of $1,700.00.

**IT IS FURTHER ORDERED** that the Trustee shall pay Thornbladh $1,700.00 out of the funds on hand.

**IT IS FURTHER ORDERED** that the Trustee shall pay the remaining funds on hand to the Debtor.

**Signed on May 12, 2020**



/s/ Phillip J. Shefferly

**Phillip J. Shefferly**
**United States Bankruptcy Judge**

---

[1] The Court is bound to follow the statute, but it's worth noting that the Debtor filed an affidavit on April 26, 2020 that states that the Debtor consents to the Trustee paying Thornbladh directly out of funds on hand with the Trustee.